Case 15-20886-GLT    Doc 180    Filed 08/14/20    Entered 08/14/20 14:33:08    Desc Main
Document      Page 1 of 7

FILED
8/14/20 2:22 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: : | Case No. 15-20886-GLT |
| : | Chapter 13 |
| **MARJORIE D. PALMER**, : | |
| : | |
| *Debtor*. : | Related to Dkt. Nos. 166, 175, 177 |
| : | |

Eileen D. Yacknin, Esq.  
Neighborhood Legal Services Association  
Pittsburgh, PA  
Attorney for the Debtor

Owen W. Katz, Esq.  
Office of the Chapter 13 Trustee  
Pittsburgh, PA  
Attorney for Ronda Winnecour

**MEMORANDUM OPINION**

Some legal disputes could easily be avoided if only the parties exercised a reasonable level of diligence. This is one of those cases. Having successfully eliminated her mortgage arrears ahead of schedule, Majorie D. Palmer (the "Debtor") sought to amend her chapter 13 plan to reflect completion upon the final curative payment she had made several months earlier. Ronda Winnecour, the chapter 13 trustee (the "Trustee"), continued to collect funds through automated bank transfers while the modification was pending and, shortly after confirmation, paid those funds to creditors in a manner inconsistent with the newly confirmed plan. The Debtor now objects to the Trustee's post-confirmation disbursements and seeks the return of $213.35 paid to unsecured creditors.[1] For the reasons set forth below, the Court will direct the Trustee to refund to the Debtor the $213.35 paid to unsecured creditors without authorization.

---

[1] *Debtor's Response in Opposition to Trustee's Motion for Approval of Trustee's Report of Receipts and Disbursements* (the "Response"), Dkt. No. 173.

**I.    BACKGROUND**

The salient facts are few and not in dispute.  In March 2015, the Debtor filed the present chapter 13 case to prevent the foreclosure of her home.  From the outset, the general unsecured creditors were not expected to receive any distribution in this case given the size of the alleged mortgage arrears in relation to her modest income (derived solely from social security and veteran's benefits).  Indeed, the focus of the first year of this case was to settle the amount of the arrearage with HSBC Bank USA, NA which was accomplished in February 2016.

With the mortgagee's claim reduced, the Debtor filed an amendment to her chapter 13 plan (the "First Amended Plan") to account for the change.[2]  The *First Amended Plan* contemplated a term of 60 months with 11 payments of $909.11 before decreasing to $780.75 for the remaining 49 months.[3]  Payments to the Trustee under the *First Amended Plan*, as well as its unconfirmed predecessor, were accomplished by automated bank transfer.[4]  The Debtor estimated no funds would be available to general unsecured creditors after payment of the mortgage, but the *First Amended Plan* acknowledged that "the actual pool of funds available for payment to these creditors under the plan base will be determined only after audit of the plan at time of completion."[5]  The Court confirmed the *First Amended Plan* in March 2016.[6]  In June 2017, the Debtor obtained confirmation of a second plan modification to address fluctuations in

---

[2]   *First Amended Chapter 13 Plan Dated February 24, 2016*, Dkt. No. 89.

[3]   Id. at 1.

[4]   Id.

[5]   Id. at ¶ 16.

[6]   Dkt. No. 96 (increasing the monthly plan payment to $785 for the remainder of the plan term beginning April 2016).

2

her mortgage escrow obligation by increasing her monthly payment to $835 for the final 37 months (the "Second Amended Plan").[7]

The mortgage arrears were fully paid by September 2019, approximately 53 months into the 60-month plan term. Because the *Second Amended Plan* remained incomplete by its own terms, the Trustee continued to receive monthly automated bank transfers in the amount $835. After payment of the Debtor's ongoing post-petition mortgage obligation, the excess formed the basis of a pool for the general unsecured creditors. As a result, in January 2020, the Trustee filed a notice of intent to pay unsecured creditors a *pro rata* distribution from the available funds.[8]

After the Trustee's notice, the Debtor sought yet another plan modification (the "Third Amended Plan").[9] The *Third Amended Plan*, dated January 23, 2020, purported to terminate the Debtor's plan obligation upon the September 2019 payment.[10] Notably, however, neither the *Third Amended Plan* nor the accompanying notice addressed the issue of the post-September 2019 automated transfers or the Trustee's intent to pay unsecured creditors with those funds.[11]

The *Third Amended Plan* was processed in the ordinary course with the scheduling of the requisite objection deadline and conciliation conference.[12] In the interim, the Trustee continued to implement the then-operative *Second Amended Plan*. Following the

---

[7] *Notice of Modification to First Amended Chapter 13 Plan Dated February 24, 2016*, Dkt. No. 119; *Order*, Dkt. No. 127 (increasing payments from $800 to $835).

[8] *Notice of Claims Filed and Intention to Pay Claims*, Dkt. No. 156.

[9] *Notice of Proposed Modification to Second Amended Plan Dated March 30, 2017*, Dkt. No. 157.

[10] Id.

[11] At oral argument, the Debtor's counsel incredulously claimed that the *Third Amended Plan* was not related to the Trustee's notice and that it simply took her four months to determine how to terminate the Debtor's plan obligation and secure a discharge.

[12] See Dkt. No. 159.

conciliation conference, and in the absence of any objections, the Trustee recommended the *Third Amended Plan* for confirmation without suggesting there were any practical concerns related to its retroactive implications.[13] Presuming the Trustee's recommendation meant there were no outstanding issues, the Court confirmed the *Third Amended Plan* on March 16, 2020.[14] A week later, the Trustee's office disbursed the remaining funds on hand to creditors, seemingly in accordance with the *Second Amended Plan* rather than the now confirmed *Third Amended Plan*.

After the Trustee moved for approval of her final account and entry of a discharge,[15] the Debtor filed a response objecting to the disbursement of $1,549.22 to HSBC Bank and a total of $213.35 to various unsecured creditors.[16] The Debtor subsequently narrowed the controversy by conceding that she was not harmed by the Trustee's payment of her post-petition mortgage obligation. In reply, the Trustee explained that her practice is to "treat any retroactive reduction of the plan term as effective as of the end of the month the plan . . . is confirmed."[17] She asserted this approach is justified because: (1) it takes her office a week or two following confirmation to process a plan modification for implementation; (2) the Trustee "deals in plan 'months'"; and (3) the office cannot go back in time.[18]

---

[13] *Conciliation Conference Minutes*, Dkt. No. 164.

[14] Dkt. No. 163.

[15] *Chapter 13 Trustee's Motion for Discharge of Debtor and Approval of Trustee's Report of Receipts and Disbursements*, Dkt. No. 166.

[16] *Response*, Dkt. No. 175 at ¶ 20.

[17] *Trustee's Reply/Status Report Regarding Debtor's Response in Opposition to Trustee's Motion for Approval of Trustee's Report of Receipts and Disbursements* (the "Reply"), Dkt. No. 177 at ¶ 10.

[18] Id. at ¶¶ 6-7, 10.

4

## II. JURISDICTION

This Court has authority to exercise jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 157(a), 1334, and the Order of Reference entered by the United States District Court for the Western District of Pennsylvania on October 16, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(A).

## III. DISCUSSION

The root of all problems in this case is the Debtor's desire to retroactively terminate her plan obligation. Technically, plan modifications routinely present temporal challenges because they do not have immediate effect and take months to reach the confirmation stage. Compounding the problem, chapter 13 cases have momentum, particularly in districts such as this where payments are usually automatically withdrawn and the Trustee endeavors to start paying creditors as quickly as possible. As a result, when retroactive, there is an inherent risk that even a promptly proposed modification will be undermined, if not rendered moot, by the Trustee's continued performance of the prior confirmed plan. Moreover, confirmation of a plan modification that provides for a *post facto* change to the terms of the plan affords only prospective relief. In other words, confirmation may alter past obligations and move the goal posts, but it does not rewrite history.

The present case not only exemplifies the practical difficulties in seeking a retroactive plan termination, but demonstrates how inattention can flummox the entire process. To start, the Debtor's four-month delay before filing the *Third Amended Plan* all but assured that a distribution inconsistent with a September 2019 plan completion would occur.[19] Luckily,

---

[19] The Court further notes that the Debtor did not object or otherwise respond to the Trustee's notice of intent to pay unsecured claims despite the ostensible purpose of the *Third Amended Plan* was to prevent such a distribution.

5

however, it appears the only pre-confirmation disbursements were on account of her post-petition mortgage obligations, which she concedes were not harmful.

But the Debtor was not the only party asleep at the switch. Despite having reviewed the *Third Amended Plan* prior to the conciliation conference, the Trustee did not raise any concerns to either the Debtor or the Court regarding its implementation. Nor did she request a delay in the effective date of the confirmation order to account for the processing limitations of her office. Instead, the Trustee fell back on a practice that was at odds with the now confirmed *Third Amended Plan* and made a disbursement to unsecured creditors that was not authorized. Ultimately, the plan "says what it says," and the Court is charged with enforcing its terms in accordance with the confirmation order. In contrast, the Trustee has not offered any legal justification to relieve her from the binding effect of confirmation.[20] For this reason, the Court finds the Debtor's objection to be well taken.

To be clear, however, the Court is sympathetic to the Trustee's position even though it cannot authorize her actions in this case. The Trustee's office is one of the largest in the country with disbursements rivaling those of a small financial institution.[21] With such volume and complexity, it is completely understandable that unusual plans would present hardships in administration. In some cases, the burdens may reflect that the plan is objectionable as a practical matter and should not be confirmed. When appropriate, however, the Trustee may request that the confirmation order include reasonable terms to grant her the leeway to address any administrative difficulties on a case-by-case basis. Otherwise, the Court presumes upon the

---

[20] See In re Szostek, 886 F.2d 1405, 1406 (3d Cir. 1989).

[21] For this reason, the Trustee must be ever vigilant for the problems that routinely plague such operations, including the over-compartmentalization of information and the inability to recognize and react to atypical situations in a timely manner.

Trustee's recommendation that the standard confirmation order with immediate effect will suffice.

## IV. CONCLUSION

In light of the foregoing, the Debtor is entitled to a refund of $213.35. This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052. The Court will issue a separate order consistent with this opinion.

ENTERED at Pittsburgh, Pennsylvania.

GREGORY L. TADDONIO
UNITED STATES BANKRUPTCY JUDGE

Dated: August 14, 2020

Case administrator to mail to:
Debtor
Attorney Eileen Yacknin, Esq.
Attorney Owen Katz, Esq.